IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AUGUST LOUIS WOLF | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 19-305 (RMC) |
| | ) | |
| | ) | |
| SAMANTHA MENH | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

# PLAINTIFF'S REVISED MEMORANDUM
# OF POINTS AND AUTHORITIES IN OPPOSITION TO
# DEFENDANT'S REVISED MOTION TO DISMISS

Plaintiff, August Louis Wolf, by counsel, pursuant to LCvR 7, respectfully submits the following Revised Memorandum of Points and Authorities in Opposition to defendant, Samantha Menh's, revised motion to dismiss [*ECF No. 21*].[1]

## I.  INTRODUCTION

On September 14, 2018, Wolf commenced this action by filing a three-count complaint against Menh for tortious interference with contract, defamation *per se* and common law conspiracy.  Wolf alleges that Menh, a highly sophisticated political operative, concocted a story about Wolf out of whole cloth, falsely accusing Wolf of sexual harassment, sexual battery, assault and other crimes and egregious misdeeds in a failed scheme to extort money from Wolf.  Wolf contends that Menh published these

---

[1]     Plaintiff commenced this action in the United States District Court for the Eastern District of Virginia.  On February 5, 2019, the District Court in Virginia entered an Order transferring the case to this Court. [*ECF No. 19*].

false and defamatory statements to media outlets ***before*** filing a lawsuit in 2016; that Menh repeated the odious statements to certain political action committees and operatives in Alexandria, Virginia, within the year immediately preceding the filing of this lawsuit; and that Menh's false statements have been republished by third-parties many times within the year preceding commencement of this action. Wolf's complaint states that Menh's wrongdoing caused Wolf to lose his employment and caused substantial injury to Wolf's personal and professional reputations, for which Wolf seeks damages. [*ECF No. 1 ("Complaint"), ¶¶ 2, 3, 4, 7, 28, 31, 33, 40, 47, 51(b). 51(f)*].

This matter is before the Court on Menh's revised motion to dismiss Wolf's complaint pursuant to Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4 ("FAA") and Rules 12(b)(3) and 12(b)(6) of the Federal Rules of Civil Procedure (the "Rules"). Menh's revised motion should be denied for three (3) reasons: First, the absolute privilege does not protect Menh because Menh chose to publish her false statements to the press ***prior*** to filing a lawsuit against Wolf. Second, Wolf is not a party to any contract requiring arbitration of his claims.[2] Third, Wolf's defamation and conspiracy claims are each within the applicable one and five-year statute of limitations.[3]

_____

[2]     In her original memorandum in support motion to dismiss, Menh incorrectly asserted that "Wolf and his campaign organization, August Wolf for Senate … hired Menh". [*ECF. No. 4, p. 2*]. In her memorandum in support of revised motion to dismiss, Menh repeats this contention. Menh also alleges that "Wolf and Menh signed an employment agreement". [*ECF. No. 21-1 ("Menh Memo in Support"), pp. 2-3*]. Wolf's complaint alleges that August Wolf for Senate ("AWFS"), **not Wolf**, hired Menh. [*Complaint, ¶ 4 ("In March 2016, August Wolf for Senate ("AWFS") hired Menh as Finance Director and Advisor")*]. **Wolf did not sign the letter agreement between AWFS and Menh**.

[3]     Wolf does not oppose Menh's request for an oral hearing.

## II.  <u>PRINCIPLES OF LAW AND ARGUMENT</u>

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N. C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim upon which relief can be granted, the Court must consider the complaint in its entirety, accepting all factual allegations in the complaint as true, "even if doubtful in fact", and must view the complaint in the light most favorable to the plaintiff. *See, e.g., Bell Atl Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *id. Macharia v. United States*, 238 F. Supp. 2d 13, 19 (D.D.C. 2002), *aff'd*, 334 F.3d 61 (D.C. Cir. 2003); *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (omission in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Although a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations omitted); *see id. Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Rudder v. Williams*, 666 F.3d

790, 794 (D.C. Cir. 2012).   Once a claim has been stated adequately, "it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563.

**A.      *Menh Is NOT Absolutely Immune From Liability***

This action is ***not*** based on statements published by Menh in a lawsuit filed in Court.  If all Menh had done was to file a lawsuit, she would be entitled to the absolute privilege accorded to statements made in the course of a judicial proceeding.

Menh did something different.

As alleged in Wolf's complaint, Menh published false and defamatory statements to media outlets ***prior to*** the time she filed her action in Connecticut[4] ***and*** also published statements to political action committees (PACs) and political operatives between September 14, 2017 and September 14, 2018. [*See, e.g., Complaint, ¶¶ 4, 40, 47, 51(b), 51(f)*].

In these circumstances, no privilege protects Menh's statements.

In order to understand why no privilege applies, it is helpful to examine cases dealing with the "fair report privilege".

---

[4]      As the Eastern District of Virginia duly observed in its Order transferring the case to this Court:

> Wolf refused to pay Menh any money and on June 2, 2016, Menh's lawyer "emailed the lawsuit to the media broadly." Six days later, on June 8, 2016, Menh's lawyer filed her complaint in the Superior Court in Connecticut. After the complaint was filed Wolf suspended his Senate campaign and was fired from his job at Lebenthal Asset Management.

[*ECF No. 19, p. 2*].

In *ZS Associates, Inc. v. Synygy, Inc.*, the defendant filed a complaint that included arguably defamatory statements about the plaintiff. *Then*, defendant issued a press release describing the complaint in some detail and republishing the allegedly defamatory statements. Plaintiff sued for defamation. Defendant moved to dismiss plaintiff's defamation claims under Rule 12(b)(6), arguing that the statements contained in the press release were subject to the "fair report privilege". 2011 WL 2038513, at * 1-3 (E.D. Pa. 2011). The fair report privilege, recognized by District of Columbia Courts, is contained in section 611 of the Restatement (Second) of Torts. Section 611 provides "[t]he publication of defamatory matter concerning another in a report of an official action or proceeding … that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgement of the occurrence reported." The Court in *ZS Associates* found that the fair report privilege was "inapplicable to Synygy in this case." The District Court looked to comment C to § 611, which states that:

> "A person cannot confer this privilege upon himself by making the original defamatory publication himself and then reporting to other people what he had stated. This is true whether the original publication was privileged or not".

The Court found that:

> The purpose of this exception is clear:  it prevents a plaintiff from filing a lawsuit containing defamatory allegations and then 'reporting' such defamatory allegations with impunity … The [fair report] privilege was not intended to permit a person maliciously to institute a judicial proceeding, alleging false and defamatory charges, then to circulate a press release or other communication based thereon, and, ultimately to escape liability by invoking the fair report privilege".

2011 WL 2038513, at * 4; *see id. The Knit With v. Knitting Fever, Inc.*, 2010 WL 3792200, at * 3-5  (E.D. Pa. 2010) ("[t]o now extend the fair report privilege to [the circumstances of this case] would allow individuals to make defamatory statements in

judicial filings, write and disseminate press reports about those filings, provide additional defamatory commentary in such reports, and then avoid all liability for those statements under the claim of privilege. Given the illogic of such a position, the Court declines to find Plaintiff's statements protected by the fair report privilege.") (cited in *ZS Associates*, 2011 WL 2038513 at * 5)).

If the fair report privilege does not shield ***post*-filing** press releases – as the Court in *ZS Associates* clearly held – surely there is no immunity for Menh's contemptuous and malicious ***pre*-filing** disclosures to the press in this case.[5]

Footnote 2 of Menh's memorandum in support of revised motion suggests that there were errors in her earlier pleadings concerning the date Menh filed her complaint. These acknowledged errors illustrate the need for discovery and, in any case, do not contradict the allegations in Wolf's complaint that Menh gave the story to the press ***before*** she filed in court.[6]   The cases cited by Menh are all distinguishable.   ***NONE*** of

---

[5]     The law recognizes that a person has a qualified privilege to publish or communicate a statement to a person or an audience, where the communicator and the listener share a "common interest". *Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 858 (D.C. Cir. 2006, *cert. denied*, 127 S.Ct. 1140 (2007). This qualified privilege is lost, however, through publication that is outside normal channels, or otherwise excessive, or that is made with malicious intent. *See, e.g., Tacka v. Georgetown Univ.*, 193 F.Supp.2d 43, 53 (D.D.C. 2001) ("Plaintiff has alleged issues of material fact on both of these grounds.   Tacka has argued that publication was not through the 'normal channels' dictated by the faculty handbook, and as a result was excessive.   Tacka has also alleged that Prelinger's failure to adhere to the guidelines, and her overall mishandling of the plagiarism charge, was motivated by malice."); *see Larimore v. Blaylock*, 259 Va. 568, 575-576, 528 S.E.2d 119 (2000) ("The rule of qualified privilege that we adopted years ago continues to encourage open communications on matters of employment while not shielding the use of such communications for an individual's personal malicious purposes"). **In this case, Menh had no qualified privilege to publish anything to the press**.

[6]     *Complaint, ¶ 31* ("**After** she leaked and published the fraudulent lawsuit to the press and others, Menh filed her complaint in a Superior Court in Connecticutt and commenced sham litigation.") (emphasis added).

those cases involved publication of false and defamatory statements to the press *prior to* commencement of a judicial proceeding. For instance, *Kelly v. Bonney* involved defamatory statements in a verified petition that was delivered to the department of child and youth services and the attorney general as part of a decertification proceeding that was "quasijudicial in nature" . 221 Conn. 549, 566 (1992) ("Like the privilege which is generally applied to pertinent statements made in formal judicial proceedings, an absolute privilege also attaches to relevant statements made during administrative proceedings which are 'quasi-judicial' in nature. Once it is determined that a proceeding is quasijudicial in nature, the absolute privilege that is granted to statements made in furtherance of it "extends to every step of the proceeding until final disposition.") (quotations and citations omitted).[7] Similarly, the defendant's counterclaim for defamation in *King v. Barbour* was "based entirely on statements Plaintiff made in his Complaint in this action and are accordingly protected by the judicial proceedings privilege." 240 F.Supp.2d 136, 142 (D.D.C. 2017) ("Defendant's defamation or libel and false light invasion of privacy claims are based entirely on Plaintiff's initiation of this lawsuit and the statements in Plaintiff's Complaint. The allegedly false statements

---

[7]    The instant case is not one contemplated by § 586 of the Restatement (Second) of Torts. Section 586 protects communications by attorneys, such as demand letters or settlement offers delivered to an opposing party. *See, e.g., Mansfield v. Bernabei*, 284 Va. 116, 727 S.E.2d 69 (2012) (The "legitimate concern we expressed in *Lindeman*, that extension of absolute privilege to pre-filing communications may prompt defamatory statements without meaningful restraint, is addressed by the Restatement requirements that the proposed judicial proceeding must be 'contemplated in good faith and under serious consideration,' and the communication must relate to that anticipated proceeding. The concern may be further alleviated by limiting the absolute privilege to disclosures made to persons with an interest in the proposed proceeding. Thus, regarding the applicability of absolute privilege to communications preliminary to a proposed judicial proceeding, this Court adopts the rule expressed in the Restatement (Second) of Torts §§ 586, 587 as well as the additional requirement that the disclosure be made only to interested persons.").

underlying Defendant's defamation/libel counterclaim are all statements in Plaintiff's Complaint, *see* Am. Counterclaim ¶ 28 ('Mr. King caused these statements to be published in the complaint in this action which is accessible to the public.'), and those same allegedly false statements form the basis of Defendant's false light claims, *see id.* ¶ 37 ('By filing his complaint, Mr. King knew that the facts contained therein would become a matter of public knowledge.').  Allegations in a complaint clearly fall within the judicial proceedings privilege.").

Menh is a sophisticated political operative.  She meant to hurt Wolf when Wolf refused her extortive demands.  Menh knew exactly what she was doing when she leaked a draft of a complaint to the press.  There is no rule of law that shields her from her regrettable behavior.

**B.**     ***Wolf Is NOT A Party To The Employment Agreement***

Menh next argues that Wolf is obligated to arbitrate his claims.

Wolf expressly denies that he is obligated to arbitrate.

The letter agreement relied upon by Menh is on the letterhead of AWFS:



The letter plainly and expressly evinces an agreement between AWFS and Menh:

Ms. Samantha Menh
406 Constitution Ave. NE
Washington, DC 20002

Dear Ms. Menh,                                                                March 18, 2016

        Upon your acknowledgement and agreement as a Contractor of August Wolf for Senate ("Campaign") and execution of this agreement and the confidentiality agreement transmitted herewith and incorporated herein, this letter will set forth the terms and conditions of your engagement.

At the foot of each page are the following words:

**AWFS-S. MENH AGREEMENT 3/18/2016**

AWFS is a principal campaign committee[8] established pursuant to the provisions of the Federal Election Campaign Law of 1971 ("FECA"). *Title 52 U.S.C. § 30101 et seq.* FECA supersedes and preempts "any provision of State law with respect to election to Federal office." *52 U.S.C. § 30143(a)*. Wolf was never the treasurer of AWFS. He has never assented to personal liability for the debts and/or obligations of AWFS. He assumed no personal obligation to Menh. Wolf is not liable for the debts of AWFS merely because he is the candidate for office. *Elections Bd. v. Ward*, 314 N.W.2d 120, 123 (Wis. 1982). ("[A] political campaign committee at common law is to be treated as a voluntary association…."); *Shortlidge v. Gutoski*, 484 A.2d 1083, 1087 (N.H. 1984) ("Mere membership in the association, without more, will not generally be sufficient to attach liability for debts incurred in the name of the association.").

---

[8]     True copies of AWFS' statement of organization for 2015 and 2016 are attached collectively as *Exhibit "A"*. The documents are public records available on the Internet. [https://www.fec.gov/data/committee/C00577536/?tab=filings&cycle=2016].

Menh urges the Court to re-write the AWFS-Menh agreement, and to make Wolf a party.  Plainly, Wolf did not sign the AWFS-Menh agreement in his individual capacity or assume any obligation to arbitrate.

### 1.    *The Agreement To Arbitrate Is Unenforceable*

Even if Wolf had signed the AWFS-Menh letter – which he did not – the arbitration clause in the letter is an unenforceable "agreement to agree".  The arbitration clause states that "you hereby agree to binding arbitration to resolve said dispute with a mutually agreeable arbiter".  In the District of Columbia, a valid contract requires "both (1) agreement as to all material terms;  and (2) intention of the parties to be bound." *Jack Baker, Inc. v. Office Space Dev. Corp.*, 664 A.2d 1236, 1238 (D.C. 1995) (internal quotation marks omitted).  In this case, the "arbiter" was not mutually agreed upon at the time AWFS and Menh signed the letter dated March 18, 2016.  Without an agreement as to the arbiter – an essential term of the contract – the arbitration clause is unenforceable.

### 2.    *Motion To Stay The Connecticutt Litigation*

Wolf has never conceded that he is bound by the letter agreement between AWFS and Menh, or that his claims against Menh are subject to arbitration.  AWFS and Wolf filed a motion to stay the Connecticutt case pending arbitration of Menh's claims.  In September 2016, the State Court entered a temporary stay that was expressly conditional:

<div style="border:1px solid black">

### ORDER

ORDER REGARDING:
07/13/2016 104.00 MOTION FOR STAY

The foregoing, having been considered by the Court, is hereby:

ORDER: GRANTED

Without objection, the stay is granted pending arbitration, provided that such arbitration be commenced within 30 days and the defendants provide the court with a status report on or before November 4, 2016 and every 90 days thereafter during the pendency of the arbitration.

Judicial Notice (JDNO) was sent regarding this order.

434443

_____

Judge: CHARLES T LEE
Processed by: Eileen Condron

</div>

[*ECF No. 21-3, p. 36*].   No arbitration was commenced by AWFS or Wolf.   No arbitration was commenced by Menh.  The stay expired.[9]

Significantly, after AWFS and Wolf filed the motion to stay, Wolf received significant new evidence, evidence that was **_not_** available to Wolf or his prior attorney at the time AWFS and Wolf filed the motion to stay – Affidavits from Campaign staffers and a taped conversation with Baylor Myers that completely refuted Menh's false claims of sexual harassment and highlighted the fact that Menh had committed independent torts outside the employment context as part of a scheme to extort Wolf.  The new evidence against Menh is a game-changer.   As a result, Wolf prepared "counterclaims" that he intended to file.  Those counterclaims – like the claims at issue in this case – do not fall within the scope of the AWFS-Menh arbitration agreement.   The AWFS-Menh arbitration clause only covers disputes between AWFS and Menh "with respect to the amount of monies owed to you or any other reason".   On its face, the arbitration clause in

---

[9]     Menh eventually filed an arbitration claim in March 2017, long *after* the stay had expired.

the AWFS-Menh agreement does not cover disputes between Wolf and Menh, and certainly _**not**_ intentional torts committed by Menh against _**after**_ the date she ceased being a contractor of AWFS and _**after**_ the AWFS-Menh agreement was terminated.[10]

All the claims asserted by Wolf in this case arose after Menh quit working for AWFS on May 18, 2016.  None of claims at issue in this case are disputes between "you [Menh] and the Campaign".

### 3.   _Law of the Case Is Inapplicable_

The "law of the case" doctrine holds that an appellate court's decision on a legal issue is binding on both the trial court on remand and an appellate court on a subsequent appeal in the same case and with substantially the same facts.  Under the law of the case doctrine, questions of law decided on appeal to a court of last resort usually govern the case throughout its later phases.  *See, e.g., United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993) ("Few legal precepts are as firmly established as the doctrine that the mandate of a higher court is 'controlling as to matters within its compass.' *Sprague v. Ticonic Nat'l Bank,* 307 U.S. 161, 168 (1939).  Indeed, it is indisputable that a lower court generally is 'bound to carry the mandate of the upper court into execution and [may] not consider the questions which the mandate laid at rest.' *Id.*  Because this 'mandate rule' is merely a 'specific application of the law of the case doctrine,' in the absence of exceptional

---

[10]      Menh's claims are "intertwined" with Wolf's claims only because Menh chose to smear Wolf with unfounded allegations of sexual battery and sexual harassment. Wolf's claims arose after Menh quit AWFS and relate to (a) Menh's publication of false and defamatory statements and the republication of those statements to third-parties and by third-parties in 2017 [*see, e.g., Complaint, ¶¶ 40 ("Menh's false accusations of sexual battery, sexual harassment and other crimes have been republished over and over and over, including many times within the last year. For instance, as a result of Menh's extortion and vengeful acts, Wolf's name appears on a "Creep Sheet", an ultimate humiliation to Wolf")*], and (b) Menh's use of unfounded litigation to tortiously interfere with Wolf's employment.

circumstances, it compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court … In addition, the rule forecloses litigation of issues decided by the district court but foregone on appeal or otherwise waived, for example because they were not raised in the district court … Thus, when this court remands for further proceedings, a district court must, except in rare circumstances, 'implement both the letter and spirit of the ... mandate, taking into account [our] opinion and the circumstances it embraces.'"); *Yesudian ex rel. U.S. v. Howard Univ.*, 270 F.3d 969, 972 (D.C. Cir. 2001) ("[T]he law of the case doctrine does not apply where an issue was not raised before the prior panel and thus was not decided by it."); *Guilford Transp. Indus., Inc. v. Wilner*, 760 A.2d 580, 593 (D.C. 2000) (the law of the case doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided," but it is "not a limit to their power.") (quoting Messinger v. Anderson, 225 U.S. 436, 444 (1912) (Holmes, J.)).

In *Wilner*, an action for libel, the defendant filed a motion to dismiss the complaint for failure to state a claim or, in the alternative, for summary judgment. The Court denied the motion for failure to state a claim outright and denied the motion for summary judgment without prejudice to refiling upon completion of discovery. The Court's ruling having kept the case alive, the parties conducted discovery, and the defendant ultimately filed a second motion for summary judgment, which was heard by a different Judge and granted. 760 A.2d at 587-588. On appeal, plaintiff argued that the second Judge "violated the principle of 'law of the case' by decline to follow [the first Judge's] earlier ruling denying [plaintiff's] motion for summary judgment." The District of Columbia Court of Appeals rejected the argument that the second Judge was bound to

follow the earlier ruling of the first Judge.   The Court of Appeals agreed with the Supreme Court of Connecticut that:

> [i]n an appeal to this court where views of the law expressed by a judge at one stage of the proceedings differ from those of another at a different stage, the important question is not whether there was a difference but which view was right.

760 A.2d at 593 (quoting *Barnes v. Schlein,* 192 Conn. 732, 473 A.2d 1221, 1222 (1984) (citations and internal quotation marks omitted).

Since there has been no appeal in this case or in the Connecticut State Court action filed by Menh, law of the case is plainly inapplicable.   Even if the doctrine were applicable, the "important questions" are:

- Is the AWFS-Menh arbitration clause is enforceable, where the parties never agreed on the "arbiter"?

-and-

- Is Wolf bound by a clause in a contract to which he is not a party and to which he never agreed?

-and-

- Does the arbitration clause in the AWFS-Menh agreement cover disputes between Wolf and Menh?

**C.**   *Wolf's Claims Are All Timely*

Menh concedes that Wolf's claim of tortious interference with contract (Count I) is timely. *Beard v. Edmondson and Gallaghar*, 790 A.2d 541, 546 (D.C. Ct. App. 2002) ("The cause of action for tortious interference with contract is subject to a three-year statute of limitations. *See* D.C.Code § 12-301(8) (2001).").[11]

Menh claims that Wolf's defamation (Count II) and common law conspiracy (Count III) claims are barred by the statute of limitations.

Count II and III are not time-barred.

**1.**   *Choice of Law*

As a general rule, Federal Courts sitting in diversity apply the forum state's choice of law rules to determine the controlling substantive law. *See, e.g. Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941).  There is a well-known exception to the

---

[11]      In her memorandum in support of revised motion to dismiss, p. 20, Menh indicates that Wolf alleges "defamation claims in Count I".  To be clear, Count I does not allege a claim of defamation.  Rather, Count I alleges that defamation was one of the egregious methods employed by Menh to tortiously interfere with Wolf's business and employment. *See, e.g., Modis, Inc. v. Infotran Systems, Inc.*, 893 F.2d 237 (D.D.C. 2012) ("The torts of intentional interference with a contract, or intentional interference with business relations, have the following elements: (1) the existence of a valid contract, business relationship or expectancy; (2) knowledge of the contract, relationship or expectancy on the part of the interferer; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) damage caused by the interference … To establish a claim of improper interference with contract or business relations, the plaintiff must demonstrate that the defendant engaged in conduct that is 'egregious; for example, it must involve libel, slander, physical coercion, fraud, misrepresentation, or disparagement.'") (citing *Sheppard v. Dickstein, Shapiro, Morin & Oshinsky*, 59 F.Supp.2d 27, 34 (D.D.C. 1999) (dismissing plaintiff's tortious interference claim where the plaintiff's complaint was "silent" as to any statements made by the defendants that constituted slander, libel, or knowing misrepresentations) (internal quotation omitted)).  **Here, Wolf has shown that Menh engaged in conduct that was egregious.  She intentionally leaked false and defamatory statements to the press accusing Wolf of numerous crimes and serious misconduct**. *Raboya v. Shrybman & Associates*, 777 F.Supp. 58, 59 (D.D.C. 1991) ("Any written or printed statement which falsely charges another with the commission of a crime is libelous *per se*.").

general rule, however. In *Van Dusen v. Barrack,* 376 U.S. 612 (1964), the United States Supreme Court held that, following a transfer initiated by a defendant, the transferee court must follow the choice-of-law rules that prevailed in the transferor court. In *Ferens v. John Deere Co.*, 494 U.S. 516 (1990), the Supreme Court decided that, when a plaintiff moves for the transfer, the same rule applies.

This case was transferred from the United States District Court for the Eastern District of Virginia to the District of Columbia. Thus, contrary to Menh's assertion, the Court applies Virginia choice-of-law rules to determine the statute of limitations applicable to Counts II and III.

### 2. *Virginia's Statutes of Limitation Apply to Counts II and III*

Under Virginia's choice-of-law rules, "it is well-settled that the limitations period is treated as a procedural issue governed by Virginia law". *Hunter Innovations Co. v. Travelers Indem. Co. of Conn.,* 753 F.Supp.2d 597, 602 (E.D.Va. 2010) (citing *Hansen v. Stanley Martin Cos.*, 266 Va. 345, 351, 585 S.E.2d 567 (2003)).

### a. *COUNT II - Defamation*

Under Virginia law, a claim for defamation must be filed within one-year after the cause of action accrues. *§ 8.01-247.1 of the Virginia Code (1950), as amended.* A cause of action for defamation accrues on the date of publication. *Jordan v. Shands*, 255 Va. 492, 500 S.E.2d 215, 218 (1998) ("Any cause of action that the plaintiff may have had for defamation against any of the defendants accrued on June 21, 1995, which is the date she alleges in her motion for judgment that the defamatory acts occurred."); *compare id. Fitzgerald v. Seamans*, 553 F.2d 220, 227 (D.C. Cir. 1977) (defamation occurs upon publication, and the statute of limitations runs from the date of publication).

### i. *The Republication Rule*

It has long been stated that "[t]alebearers are as bad as talemakers". *Harris v. Minvielle*, 19 So. 935, 928 (La. Ct. App. 1896) (cited in *ZS Associates*, 2011 WL 2038513 at * 4)).

Virginia follows the "republication rule", which holds that the original defamer is liable for the republication or repetition of her defamation by others.[12]   Republication occurs when the original defamatory statement is "affirmatively reiterated" or redistributed to a new audience. *Eramo v. Rolling Stone, LLC*, 2016 WL 5234688, at * 11 (W.D. Va. 2016) (citing *Clark v. Viacom Int'l, Inc.*, 617 Fed.Appx. 495, 505 (6th Cir. 2015) and *In re Davis*, 347 B.R. 607, 611 (W.D. Ky. 2006)); *id. Gilmore v. Jones*, Case No. 3:18-cv-00017 (W.D. Va. March 29, 2019) (Document 123, Memorandum Opinion, p. 27) (article and video published on the website www.infowars.com was republished by Alex Jones on his YouTube channel).   The leading case in Virginia on republication is *Weaver v. Beneficial Finance Co.*, 199 Va. 196, 98 S.E.2d 687 (1957).   In *Weaver*, the defendants wrote a libelous letter about the plaintiff, and published the letter to plaintiff's

---

[12]      Under the republication rule, "one who repeats a defamatory statement is as liable as the original defamer." *Reuber v. Good Chemical News, Inc.*, 925 F.2d 703, 712 (4th Cir. 1991), *cert. denied*, 111 S.Ct. 2814 (1991); *Lee v. Dong-A Ilbo*, 849 F.2d 876, 878 (4th Cir. 1988) (same); *see also Dragulescu v. Va. Union Univ.*, 223 F.Supp.3d 499, 509 (E.D. Va. 2016) ("[E]ach successive publication of an old or preexisting defamatory statement gives rise to a new cause of action under Virginia law."); *Eramo v. Rolling Stone, LLC*, 209 F. Supp.3d 862, 872 (W.D. Va. 2016) ("'[r]epetition of another's words does not release one of responsibility if the repeater knows that the words are false or inherently improbable, or there are obvious reasons to doubt the veracity of the person quoted.'") (quoting *Goldwater v. Ginzburg*, 414 F.2d 324, 337 (2nd Cir. 1969), *cert. denied*, 396 U.S. 1049 (1970)); *id. Olinger v. American Savings and Loan Ass'n*, 409 F.2d 142, 144 (D.C. Cir. 1969) ("The law affords no protection to those who couch their libel in the form of reports or repetition … [T]he repeater cannot defend on the ground of truth simply by proving that the source named did, in fact, utter the statement.").

employer.  The letter was later republished to the company's promotion board.  In his

complaint, the plaintiff alleged

> "that the libelous letter in question was republished on or about March 21, 1956
> before a promotion board convened to consider appellant's record, at which time
> the contents of the letter were first made known to appellant; that the letter
> suggested that appellant was and is dishonest, insolvent and one to whom credit
> should not be extended; that it attacked his reputation for integrity; that appellees
> knew the libelous letter would be a permanent part of his record and would be
> republished in the future; that the republication of the letter was the natural and
> probable consequence of the appellees' act … Appellant's cause of action is
> grounded upon the republication of the letter, on March 21, 1956."

199 Va. at 198, 98 S.E.2d at 690.  The trial court sustained a plea in bar of the statute of

limitations, and dismissed plaintiff's complaint for defamation with prejudice.  The

Supreme Court reversed, holding as follows:

> "It is well settled that the author or originator of a defamation is liable for a
> republication or repetition thereof by third persons, provided it is the natural and
> probable consequence of his act, or he has presumptively or actually authorized or
> directed its republication.  This is based upon the principle that such republication
> constitutes a new cause of action against the original author.  However, the
> original author is not responsible if the republication or repetition is not the
> natural and probable consequence of his act, but is the independent and
> unauthorized act of a third party.
> …
>
> "'Under the weight of authority the author of a libel or slander is not liable for its
> voluntary and unjustifiable repetition, without his authority or request, by others
> over whom he has no control, either as on a direct cause of action or by way of
> aggravation of damages, and such repetition cannot be considered in law a
> necessary, natural and probable consequence of the original slander or libel.  But
> the rule has one important qualification.  It is a general principle that every one is
> responsible for the necessary consequences of his act, and it may be that the
> repetition of a slander or libel may be the natural consequence of the original
> publication, in which case the author of the original defamatory matter would be
> liable.  **And where the words declared on are slanderous per se their
> repetition by others is the natural and probable result of the original
> slander**.'"

199 Va. at 199-200, 98 S.E.2d at 690 (emphasis added); *Moore v. Allied Chemical Corp.*,

480 F.Supp. 364, 376 (E.D. Va. 1979) ("Count V is not time-barred insofar as plaintiff

seeks to hold Allied liable for republications of the allegedly defamatory statement occurring on or after July 1, 1976.  If he can show that the statement was defamatory, he may be able to show that the republications of the statement were the natural and probable result of the original publication.").

Menh's statements about Wolf are slanderous *per se*.  In his Complaint, Wolf alleges that Menh's original defamatory statements – leaked to the press **before** Menh filed suit in June 2016 – were republished by third-parties in 2017 within the year prior to the date Wolf filed this action.[13]  Wolf also alleges that Menh published false and defamatory statements about Wolf to political operatives in Virginia within the year preceding commencement of this action. [*Complaint, ¶ 4 ("Between 2016 and the present, Menh, acting in concert with certain political operatives, interfered with Wolf's business and employment and repeatedly defamed and disparaged Wolf"); ¶ 40 ("Menh's false accusations of sexual battery, sexual harassment and other crimes have been republished over and over and over, including many times within the last year.  For instance, as a result of Menh's extortion and vengeful acts, Wolf's name appears on a "Creep Sheet", an ultimate humiliation to Wolf"); ¶ 48 ("Menh is liable for the republication of the false and defamatory statements by third-parties within the past year"); ¶ 51(b) ("Menh intentionally set out to destroy Wolf with falsehoods.  The false statements were published to the media and political operatives, such as GWLF and*

---

[13]     In her memorandum in support of revised motion to dismiss, p. 20, Menh states that "Wolf alleges that Menh published the defamatory allegations of her complaint when she filed it on June 1, 2016."  This is not what Wolf alleges.  Wolf alleges that Menh published false and defamatory statement to media outlets ***before*** she filed her lawsuit.

*Backer [https://www.political.law/dan] in Virginia in retaliation and reprisal for Wolf's refusal to pay the sum unlawfully demanded by Menh")*].

Applying Virginia law, Wolf's claims of defamation are timely. Viewed in the light most favorable to Wolf, the Complaint alleges that Menh's false and defamatory statements were republished by numerous media outlets and third parties between November 20, 2017 and September 14, 2018 – the date Wolf filed this action. Menh's publication to PACs and political operatives, such as GWLF, also occurred within the year prior to commencement of this case.

      **b.**        *__COUNT III – Conspiracy__*

Under Virginia law, Wolf's conspiracy claim is also timely. *See, e.g., Hurst v. State Farm Mut. Auto Ins. Co.*, 2007 WL 951692, at * 5 (W.D. Va. 2007) ("The limitations period for a civil conspiracy is based on the statute of limitations for the underlying act"); *Dunlap v. Cottman Transmission Systems, LLC*, 287 Va. 207, 222, 754 S.E.2d 313 (2012) ("we hold that the five-year statute of limitations in Code § 8.01–243(B) applies to both tortious interference with contract and tortious interference with business expectancy."); *Amr v. Virginia State University*, 2011 WL 4404030, at * 15 (E.D. Va. 2011) ("Tortious interference with contract constitutes an injury to property governed by Virginia's five-year statute of limitations [in § 8.01-243 of the Virginia Code]").

Wolf's common law conspiracy claim is predicated Menh's tortious interference with Wolf's employment. [*Complaint, ¶ 55*]. In *Dunlap v. Cottman Transmission Systems, LLC*, the Virginia Supreme Court affirmed that tortious interference with contract is an "unlawful act" that will support a claim of conspiracy. 287 Va. at 217-218,

754 S.E.2d at 318 ("we hold that tortious interference with contract and tortious interference with business expectancy each constitute the requisite 'unlawful act' to proceed on a business conspiracy claim").   There is no dispute that Wolf's claim of tortious interference is timely.   Therefore, his claim that Menh and agents of GWLF conspired to tortiously interfere with Wolf's employment, using improper methods such as defamation, is likewise timely.

## CONCLUSION AND REQUEST FOR RELIEF

For the reasons stated above and at the hearing of this matter, Wolf respectfully requests the Court to deny Menh's revised motion to dismiss.


DATED:        April 15, 2019


Signature of Counsel on Next Page

AUGUST LOUIS WOLF


By:    */s/Richard S. Basile*
        Richard S. Basile
        (D.C. Bar No. 374069)
        6305 Ivy Lane, Suite 416
        Greenbelt, MD 20770
        Telephone:    301-441-4900
        Facsimile:    301-441-2404
        Email:       rearsb@gmail.com

        *Counsel for the Plaintiff*

        Steven S. Biss (VSB # 32972)
        300 West Main Street, Suite 102
        Charlottesville, Virginia 22903
        Telephone:    (804) 501-8272
        Facsimile:    (202) 318-4098
        Email:       stevenbiss@earthlink.net

        *Counsel for the Plaintiff*
        *(Motion for Admission Pro Hac Vice*
           *to be filed)*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on April 15, 2019 a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will send notice of electronic filing to counsel for the Defendant and all interested parties receiving notices via CM/ECF.

By:  */s/Richard S. Basile*
            Richard S. Basile
            (D.C. Bar No. 374069)
            6305 Ivy Lane, Suite 416
            Greenbelt, MD 20770
            Telephone:  301-441-4900

            *Counsel for the Plaintiff*

            Steven S. Biss (VSB # 32972)
            300 West Main Street, Suite 102
            Charlottesville, Virginia 22903
            Telephone:     (804) 501-8272
            Facsimile:     (202) 318-4098
            Email:          **stevenbiss@earthlink.net**

            *Counsel for the Plaintiff*
            *(Motion for Admission Pro Hac Vice*
                *to be filed)*