UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|                          |   |                                |
|--------------------------|---|--------------------------------|
| AUGUST LOUIS WOLF,       | ) |                                |
|      Plaintiff,          | ) |                                |
|      v.                  | ) | Civil Action No. 19-305 (RMC)  |
| SAMANTHA MENH,           | ) |                                |
|      Defendant.          | ) |                                |

**MEMORANDUM OPINION**

In 2016, Plaintiff August Wolf sought the Connecticut Republican Party's nomination for a seat in the United States Senate. Mr. Wolf's campaign was derailed, however, after one of his advisors, Defendant Samantha Menh, resigned from his campaign and filed suit against him in Connecticut Superior Court alleging sexual harassment, among other misdeeds. Now Mr. Wolf has responded by suing Ms. Menh for defamation. But Ms. Menh's allegedly defamatory statements are protected by an absolute litigation privilege and cannot be the basis of a defamation suit. Thus, the Court will dismiss Mr. Wolf's Complaint.

**I.  BACKGROUND**

In 2016, Mr. Wolf sought the Connecticut Republican Party's nomination to run against Democrat Richard Blumenthal for the United States Senate. Compl. [Dkt. 1] ¶ 3. To help Mr. Wolf qualify for the Republican Primary, Mr. Wolf's campaign organization, August Wolf for Senate (AWFS), hired Ms. Menh in March 2016 to serve as Finance Director and Advisor. *Id.* ¶ 4. Apparently, things did not go well: Ms. Menh resigned six weeks later. *Id.* Things then got worse. On June 1, 2016, Ms. Menh filed a complaint in Connecticut Superior Court alleging, among other things, sexual harassment, a hostile work environment, and violation

1

of campaign finance laws by Mr. Wolf and AWFS. Compl. ¶ 26; *see also* Complaint, *Menh v. Wolf*, No. FSTCV166028725S (Conn. Super. Ct. June 1, 2016). Ms. Menh also shared copies of her complaint with media sources, which widely distributed the story. Compl. ¶¶ 28-29. Mr. Wolf alleges that the salacious nature of her allegations and the resulting negative publicity forced AWFS to suspend Mr. Wolf's Senate campaign. *Id.* ¶ 32. The negative publicity also cost Mr. Wolf his job as Managing Director at Lebenthal Asset Management in New York City and has allegedly dogged him ever since. *Id.*

Mr. Wolf denies Ms. Menh's allegations and argues that the Connecticut litigation is a sham intended to punish Mr. Wolf for withstanding Ms. Menh's attempts to extort money from him. *Id.* ¶¶ 25-28, 31. Therefore, he has filed this lawsuit against Ms. Menh, alleging tortious interference with contract (Count I), defamation *per se* (Count II), and common law conspiracy (Count III). *See generally* Compl.

This case was originally filed in federal court in the Eastern District of Virginia. *Id.* ¶¶ 5-7; *see generally Wolf v. Menh*, No. 18-CV-1180 (E.D. Va.). However, Judge Liam O'Grady of that court found that the Eastern District did not have personal jurisdiction over Ms. Menh because she is a resident of the District of Columbia and has not established minimum contacts with Virginia "enough so 'that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" Order, *Wolf v. Menh*, No. 18-CV-1180 (E.D. Va. Feb 5, 2019), Dkt. 19 at 4 (*hereinafter* Transfer Order) (quoting *World-Wide Volkwagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Judge O'Grady also found that venue in the Eastern District was improper because Ms. Menh did not live in Virginia and a substantial part of the events giving rise to the claim did not take place in Virginia. *See id.* at 6-7 ("Rather, reading the Complaint as a whole it is clear that the substantial

part of the events or omissions giving rise to this claim took place in the District of Connecticut."). At Mr. Wolf's request, Judge O'Grady transferred the case to this Court, where venue and personal jurisdiction are proper. *See id.* at 7; *see also* 28 U.S.C. § 1406 ("The district court of a district in which is filed a case laying venue in the wrong division or district shall . . . transfer such case to any district or division in which it could have been brought."). Ms. Menh moves to dismiss this case or compel arbitration. Mr. Wolf opposes. The matter is ripe for review.[1]

## II. LEGAL STANDARD

### A. Motion to Dismiss

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face. *See* Fed. R. Civ. P. 12(b)(6). A complaint must be sufficient "to give a defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). To survive a motion to dismiss, a complaint must contain sufficient factual information, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Twombly*, 550 U.S. at 555). A court must assume the truth of all well-pleaded factual allegations and construe reasonable inferences from those allegations in favor of the plaintiff. *See Sissel v. Dep't of Health & Human Servs.*, 760 F.3d 1, 4 (D.C. Cir. 2014). However, a court need not accept inferences drawn by a plaintiff if such inferences are not supported by the facts set out in the complaint. *See Kowal v. MCI*

---

[1] *See* Def.'s Revised Mot. to Dismiss Compl. and/or Compel Arbitration [Dkt. 21]; Def.'s Mem. of Law in Supp. of Revised Mot. to Dismiss Compl. and/or Compel Arbitration [Dkt. 21-1]; Pl.'s Revised Mem. of P. & A. in Opp'n to Def.'s Revised Mot. to Dismiss (Opp'n) [Dkt. 26]; Def.'s Reply in Further Supp. of Revised Motion to Dismiss Compl. and/or Compel Arbitration [Dkt. 32].

*Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Further, a court need not accept legal conclusions set forth in a complaint. *See Iqbal*, 556 U.S. at 678. In addition to the complaint's factual allegations, the Court may consider "documents attached to or incorporated in the complaint, matters of which courts may take judicial notice, and documents appended to a motion to dismiss whose authenticity is not disputed, if they are referred to in the complaint and integral to a claim." *Harris v. Amalgamated Transit Union Local 689*, 825 F. Supp. 2d 82, 85 (D.D.C. 2011).

### B. Choice of Laws

This Court has diversity jurisdiction because Mr. Wolf is a resident of Florida, Ms. Menh the District of Columbia, and the amount in controversy exceeds $75,000. *See* Compl. ¶¶ 3-4; 28 U.S.C. § 1332.

Federal courts sitting in diversity must apply the choice-of-law rules of the state in which they sit. *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 491 (1941). As a preliminary matter, Mr. Wolf notes an exception to this rule: when a plaintiff is granted a change in venue, the new court continues to apply the laws of the forum from which the case was transferred. *See Ferens v. John Deere Co.*, 494 U.S. 516, 523-27 (1990); *see also Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964) (applying the original forum's laws when transfer was initiated by the defendant). Accordingly, Mr. Wolf argues his case largely in line with Virginia law. But as with so many legal rules, there is an exception to the exception: the laws of the forum from which a case was transferred do not follow when the initial choice of venue was improper. *See Gerena v. Korb*, 617 F.3d 197, 204 (2d Cir. 2010) ("If a district court receives a case pursuant to a transfer under 28 U.S.C. § 1406(a), for improper venue . . . it logically applies the law of the state in which it sits, since the original venue, with its governing laws, was never a proper option."); *cf. Atl. Marine Const. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S.

4

49, 66 (2013) (rejecting "the rule that the law of the court in which the plaintiff inappropriately filed suit should follow the case to the forum contractually selected by the parties"). To allow otherwise would create opportunities for forum shopping and provide plaintiffs with state-law advantages to which they are not otherwise entitled. *See Atl. Marine Const. Co.*, 571 U.S. at 66. Instead, the applicable law reverts to the default: the laws of the sitting court's forum. *See Gerena*, 617 F.3d at 204. Because this case was transferred to the District Court in D.C. for want of venue and jurisdiction in Virginia, this Court will apply D.C. law, including its choice of law rules. *YWCA v. Allstate Ins. Co.*, 275 F.3d 1145, 1150 (D.C. Cir. 2002).

The question, then, is whether Connecticut law or D.C. law should be applied. To determine which jurisdiction's law applies in a tort case, D.C. courts first ask whether there is a "true conflict" between the laws of relevant jurisdictions—"'that is, whether more than one jurisdiction has a potential interest in having its law applied and, if so, whether the law of the competing jurisdictions is different." *In re APA Assessment Fee Litig.*, 766 F.3d 39, 52 (D.C. Cir. 2014). If there is no conflict, D.C. law applies by default. *Geico v. Fetisoff*, 958 F.2d 1137, 1141 (D.C. Cir. 1992) (citing *Fowler v. A & A Co.*, 262 A.2d 344, 348 (D.C. 1970)). If a conflict of law exists, District of Columbia courts apply a "governmental interests analysis" together with a "most significant relationship" test. *Oveissi v. Islamic Republic of Iran*, 573 F.3d 835, 842 (D.C. Cir. 2009) (citing *Hercules & Co., Ltd. v. Shama Rest. Corp.*, 566 A.2d 31, 40-41 (D.C. 1989) and *Jaffe v. Pallotta TeamWorks*, 374 F.3d 1223, 1227 (D.C. Cir. 2004)).

Under the governmental interests test, a court evaluates the governmental policies underlying the applicable law and determines which jurisdiction's policy would be most advanced by having its law applied. *Id*. To determine which jurisdiction has the most significant relationship to a case, courts balance the competing interests of the two jurisdictions and apply

5

the law of the jurisdiction with the more significant interest. *Id.* The court must consider (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered. *Herbert v. District of Columbia*, 808 A.2d 776, 779 (D.C. 2002) (citing Restatement (Second) of Conflict of Laws § 145 (1971)). "Generally, for tort claims the jurisdiction in which the injury occurred has the most significant relationship." *Mattiaccio v. DHA Group, Inc.*, 20 F. Supp. 3d 220, 228 (D.D.C. 2014) (citing Restatement (Second) Conflicts of Laws § 156 cmt. b (1971)). Further, "[t]he ultimate goal of a governmental interest analysis is to determine the jurisdiction with 'the most significant relationship' to the issue in dispute." *Id.* In defamation suits, "[t]he weight of authority considers that the law to be applied is . . . [that of] the place where the plaintiff suffered injury by reason of his loss of reputation." *Weyrich v. New Republic Inc.*, 235 F.3d 617, 626 (D.C. Cir. 2001) (citing Restatement (Second) Conflicts of Laws § 150 cmt. e (1971)).

### III. ANALYSIS

#### A. Defamation

Ms. Menh does not argue that the statements in her complaint are not defamatory (if untrue). Rather, her defense is that her allegedly defamatory statements are protected by the absolute privilege afforded to judicial proceedings. In general, that privilege "protects defamatory matter in pleadings, and statements made by attorneys, parties, witnesses, and jurors so far as they are involved in and related to judicial proceedings." Dan Dobbs *et al.*, The Law of Torts § 539 (2d ed. 2019). The privilege is "absolute" in that "it is not defeated by the defendant's malice, which, under common law notions, involved ill-will, spite, improper purpose or the like." *Id.* § 538. "The privilege is in effect a complete immunity." *Id.* That said, the absolute privilege may be lost if abused. For example, "[w]hen the facts or nature of the

6

privilege calls for publication only to a limited group, the privilege is lost by excessive publication." *Id.* § 550.

Both the District of Columbia and Connecticut recognize the absolute privilege for judicial proceedings. *See Petyan v. Ellis*, 510 A.2d 1337, 1338 (Conn. 1986) ("There is a long-standing common law rule that communications uttered or published in the course of judicial proceedings are absolutely privileged so long as they are in some way pertinent to the subject of the controversy." (internal quotations omitted)); *Finkelstein, Thompson & Loughran v. Hemispherx Biopharma, Inc.*, 774 A.2d 332, 338 (D.C. 2001) ("[T]he District of Columbia has long recognized an absolute privilege for statements made preliminary to, or in the court of, a judicial proceeding, so long as the statements bear some relation to the proceeding."). However, the scope of that privilege differs between the jurisdictions. Under D.C. law, the privilege has been "'held to be inapplicable' when it is 'published to persons not having an interest [in] or connection to the litigation.'" *Messina v. Krakower*, 439 F.3d 755, 761-62 (D.C. Cir. 2006) (quoting *Finkelstein*, 774 A.2d at 342). Accordingly, the privilege does not attach to publication of a complaint to the media that is "gratuitous and bears no relevance whatsoever to the judicial proceedings." *Newmyer v. Sidwell Friends Sch.*, 128 A.3d 1023, 1042 (D.C. 2015); *see also id.* ("We can discern no purpose behind [wide publication of the complaint] other than to brand Dr. Huntington with a scarlet letter by increasing public awareness of the lawsuit."). Under Connecticut law, "[p]ublication to the news media is not ordinarily sufficiently related to a judicial proceeding to constitute a privileged occasion." *Kelly v. Bonney*, 606 A.2d 693, 707 (Conn. 1992) (internal quotations omitted). Notwithstanding this apparent similarity to D.C. law, however, Connecticut law further provides that "[p]ublication to the media of material that the media was independently entitled to view. . . cannot provide a basis for a claim of

7

defamation." *Id.*; *see also id.* at 708 ("The pivotal question here is whether, regardless of the actions of the defendant, the media would have been entitled to access to the complaint.").[2] This difference is relevant because all the media sources cited by Mr. Wolf refer only to the text of Ms. Menh's complaint. Under D.C. law, excessive publication of the complaint to the media can generate liability. *Cf.* Compl. ¶ 55 ("Menh utilized a progressive news aggregator, email, text messages, the Internet and social media to publish, republish and spread the defamation and character assassination and to prosecute and pursue unfounded litigation."). Under Connecticut law, it cannot. Thus, the Court must determine which forum's laws apply.

Although questions of choice of law can require extensive examination of facts and law, such an approach is not necessary here: the applicable factors overwhelmingly indicate that Connecticut has the greater interest in having its law applied. First, it is clear Mr. Wolf was injured in Connecticut, where he was campaigning for the U.S. Senate, where Ms. Menh filed her complaint, where media coverage ensued, and where his campaign folded as a result. To the extent he was allegedly injured elsewhere by the publication of the complaint, those injuries are only in addition to similar injuries suffered in Connecticut.[3] Second, the alleged conduct causing the injury—Ms. Menh's filing suit and disseminating her complaint—plainly occurred in Connecticut. Third, although Ms. Menh is currently domiciled in the District of Columbia (and Mr. Wolf in Florida), both parties were domiciled in Connecticut when Mr. Wolf campaigned for

---

[2] The distinction in Connecticut law appears to be between provision of a complaint itself and statements to the media which discuss the case more broadly, such as attorney interviews. *See Arigno v. Murzin*, No. CV 960474102S, 1998 WL 142467 (Conn. Super. Ct. Feb. 6, 1998).

[3] Upon transfer to this Court, Mr. Wolf did not amend his Complaint to include specific injuries other than in Virginia and New York. Judge O'Grady has already found Mr. Wolf's pleadings insufficient to establish personal jurisdiction in Virginia, and neither party argues that New York has personal jurisdiction over Ms. Menh, much less that New York law applies.

Senate, when Ms. Menh's complaint was filed, and when she allegedly contacted the media. *See* Complaint ¶¶ 2-3, *Menh v. Wolf*, No. FSTCV166028725S (Conn. Super. Ct. June 1, 2016); *cf. Oveisii*, 573 F.3d at 842 (preferring the plaintiff's domicile at the time of the injury). Fourth, the parties' relationship centers squarely on their time together as part of Mr. Wolf's Senate campaign in Connecticut and its immediate aftermath. All of this is to say that this was a Connecticut dispute and the interests of the District of Columbia, or any other forum, "are attenuated at best." *See Jaffe*, 374 F.3d at 1229; *accord* Transfer Order at 7 ("Rather, reading the Complaint as a whole it is clear that the substantial part of the events or omissions giving rise to this claim took place in the District of Connecticut.").

To recap: Mr. Wolf alleges that Ms. Menh "emailed the lawsuit to the media broadly" and that "the press simply repeated Menh's false accusations as if they were true." Compl. ¶¶ 28-29. But under Connecticut law publication of the complaint alone is protected by the judicial proceedings privilege, and Mr. Wolf does not allege that Ms. Menh or her attorney made statements to the press beyond what was in her complaint. Accordingly, he cannot bring a claim for defamation on those statements.

Mr. Wolf offers two responses. First, he argues that Ms. Menh is not protected by the judicial proceedings privilege because she published her complaint to the media. *See* Opp'n at 4-5. Mr. Wolf does not contest that Connecticut law permits her to make such publications. Rather, he argues that under Pennsylvania case law, the fair reporting privilege does not "permit a person maliciously to institute a judicial proceeding, alleging false and defamatory charges, then to circulate a press release or other communication based thereon, and, ultimately to escape liability." *Id.* at 5 (quoting *ZS Assocs., Inc. v. Synygy, Inc.*, No. 10-4274. 2011 WL 2038513, at *4 (E.D. Penn. May 23, 2011)); *see also* Restatement (Second) of Torts § 611 cmt. c (1977) ("A

9

person cannot confer this privilege upon himself by making the original defamatory publication himself and then reporting to other people what he had stated."). The obvious flaw in Mr. Wolf's argument is that it discusses a policy adopted by the courts of Pennsylvania (and the Restatement) but not the courts of Connecticut, and in this case the latter controls, not the former.[4] *Cf.* Robert D. Sack, Sack on Defamation § 8:2.1 (5th ed. 2019) (discussing variations of the privilege between states).

Second, Mr. Wolf argues that the judicial proceedings privilege does not apply to Ms. Menh because she made statements to the press *before* her complaint was filed in Connecticut Superior Court. Mr. Wolf does not allege any publications before June 2, 2016. Mr. Wolf also acknowledges that Ms. Menh's revised motion to dismiss included a copy of the docket for the Connecticut litigation showing that she had filed her complaint on June 1, 2016, instead of June 8, 2016, as he previously thought. *See* Opp'n at 4. According to Mr. Wolf, however, this discrepancy only highlights the need for discovery.

Discovery is unnecessary to resolve this dispute. The Court takes judicial notice of the Connecticut Superior Court docket, which clearly shows that Ms. Menh's complaint was filed on June 1, 2016. *Menh v. Wolf*, No. FSTCV166028725S (Conn. Super. Ct.), *available at* http://bit.ly/2Kw5Lmz (last accessed Aug. 1, 2019). In this regard, it is notable that all of the media articles cited by Mr. Wolf postdate June 1, 2016. *See* Compl. ¶¶ 28-29 (citing Rollcall, Ex-Adviser Says Senate Candidate Frequently Referred to His Penis (June 2, 2016), *available at*

---

[4] The Court notes that Connecticut has balanced this privilege by holding that "absolute immunity does not bar claims against attorneys for vexatious litigation or malicious prosecution." *Simms v. Seaman*, 69 A.3d 880, 890 (Conn. 2013); *see also Rioux v. Barry*, 927 A.2d 304, 347-48 (Conn. 2007) ("We previously recognized . . . that, although the tort of defamation cannot surmount a claim of absolute immunity for statements made in a judicial proceeding, the tort of vexatious litigation is treated differently.").

10

http://bit.ly/2KgAB2c; Raw Story, GOP Candidate Who Wanted "Taser on My Dick" to Stay Awake Faces Sexual Harassment Lawsuit (June 2, 2016), *available at* http://bit.ly/2YEBJ93; Bipartisan Report, Connecticut GOP Candidate Faces Lawsuit after Frequently Discussing His Penis with Co-Worker (June 2, 2016), *available at* http://bit.ly/2GFIq0z). It is also notable that all of the articles rely only on the contents of the complaint, and not on additional statements by Ms. Menh or her attorney, for their reporting.

Mr. Wolf argues that none of the above contradicts the assertion in his complaint that Ms. Menh filed her complaint only after she had leaked the story to the media. *See* Compl. ¶ 31 ("*After* she leaked and published the fraudulent lawsuit to the press and others, Menh filed her complaint." (emphasis added)). But conclusory statements that Ms. Menh leaked her complaint at some unknown time to some unknown party are not enough. Even under the federal courts' liberal pleading standards, a defamation complaint must at least "identify the allegedly defamatory statements, the person who made the statements, the time when the statements were made, and the third parties to whom the statements were published." *Mobile Data Shred, Inc. v. United Bank of Switzerland*, No. 99-CV-10315, 2000 WL 351516, at *6 (S.D.N.Y. 2000). "The central concern is that the complaint afford defendant sufficient notice of the communications complained of to enable him to defend himself." *Kelly v. Schmidberger*, 806 F.2d 44, 46 (2d Cir. 1986). No such notice is provided in the Complaint here; Mr. Wolf identifies no speakers or listeners, no times of communication, and no media reports published before Ms. Menh's complaint was filed. Likewise, Mr. Wolf's vague assertion that Ms. Menh "acting in concert with certain political operatives, interfered with Wolf's business and employment and repeatedly defamed and disparaged Wolf," Compl. ¶ 4, is not specific enough

to make out a claim for defamation. Mr. Wolf's claim for defamation *per se* (Count II) will be dismissed.

## B. Tortious Interference and Conspiracy

Mr. Wolf's complaint also includes counts of Tortious Interference with Contract (Count I) and Common Law Conspiracy (Count III). But these claims are so closely intertwined with, and so heavily dependent upon, the allegations in Count II, that they cannot stand on their own. *See* Compl. ¶ 43 ("Menh intentionally interfered with Wolf's contract, property rights and business expectancies by . . . devising and orchestrating a scheme to extort, defame and injure Wolf by fabricating accusations of battery, sexual harassment and wrongdoing, by extorting Wolf and by proceeding with unfounded litigation."); *Id*. ¶ 55 ("Menh combined, associated, agreed or acted in concert with others . . . for the express purpose of injuring Wolf in his business and reputation by tortiously interfering with Wolf's employment contract with Lebenthal and through the publication and republication of false and defamatory statements."). More to the point, under Connecticut law the same privilege for judicial proceedings that protects Ms. Menh's statements under the defamation claim "applies just as equally to this tort as it does to the tort of defamation." *Rioux*, 927 A.2d at 311-12; *see also Simms*, 69 A.3d at 921 ("The court in *Rioux* concluded, however, that absolute immunity did bar the plaintiff's claim of intentional interference with contractual or beneficial relations."). Counts I and III will also be dismissed.

## IV. CONCLUSION

Mr. Wolf believes he has been defamed. But under Connecticut law, on which this case turns, the statements in Ms. Menh's Connecticut complaint which form the basis for Mr. Wolf's lawsuit cannot be used against her. He has made no adequate allegations of defamation beyond the Connecticut complaint itself. Accordingly, the Court will grant Ms. Menh's Revised Motion to Dismiss and/or Compel Arbitration, Dkt. 21. Because the Court has determined that Ms. Menh's Connecticut complaint was privileged, it does not address arbitration of this dispute. A memorializing Order accompanies this Memorandum Opinion.

Date: August 8, 2019

_____
ROSEMARY M. COLLYER
United States District Judge